

**IT IS ORDERED as set forth below:**

**Date: October 1, 2018**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IN RE:

JAMES DANIEL WISNER,

     Debtor.

KYLE A. COOPER,

     Plaintiff,

v.

CARIBOU INVESTMENTS LLC,
THE PIEDMONT BANK, and
BRUMBLEY VENTURES LLC,

     Defendants.

CASE NO. 16-59003-BEM

CHAPTER 7

ADVERSARY PROCEEDING NO.
17-5252-BEM

### ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

**I.    Introduction**

    Kyle A. Cooper, as trustee for the Chapter 7 estate of James Daniel Wisner (the

"Trustee"), filed a Complaint [Doc. 1] seeking avoidance and recovery of certain transfers made

to The Piedmont Bank ("Piedmont"), Caribou Investments LLC ("Caribou"), and Brumbley

Ventures LLC ("Brumbley"). Piedmont's Answer and Defenses [Doc. 4] ("Answer") includes a

counterclaim (the "Counterclaim") seeking a determination that its judgment lien is superior to

and has priority over any interests held by the Trustee and unsecured creditors.  This matter is

before the Court on Piedmont's Motion for Judgment on the Pleadings [Doc. 9] ("Motion")

seeking a judgment as to the Counterclaim. As further explained below, the Motion will be

denied.

## II.    Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) (applicable here through Federal Rule of

Bankruptcy Procedure 7012) states, "After the pleadings are closed—but early enough not to

delay trial—a party may move for judgment on the pleadings." "[A] Rule 12(c) motion is

designed to provide a means of disposing of cases when the material facts are not in dispute

between the parties and a judgment on the merits can be achieved by focusing on the content of

the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings,

whatever is central or integral to the claim for relief or defense, and any facts of which the

district court will take judicial notice." 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.). Accordingly,

"[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the

moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d

1329, 1335 (11th Cir. 2014). In determining whether a party is entitled to judgment on the

pleadings, the Court accepts as true all material facts alleged in the non-moving party's pleading

and views those facts in the light most favorable to the non-moving party. *Id.* If the pleadings

reveal a material dispute of fact, a motion for judgment on the pleadings must be denied. *Id.*

### III.    Facts and Relief Sought

The Court has reviewed the Complaint, the Answer, and Trustee's Answer to Counterclaim of the Piedmont Bank [Doc. 11] ("Answer to Counterclaim") for what appear to be the undisputed facts.[1] The Court sets out those facts below, noting where appropriate any factual disputes.

### A.    Facts

On May 24, 2016 (the "Petition Date"), James Daniel Wisner ("Debtor") filed under penalty of perjury a voluntary petition constituting an order for relief under 11 U.S.C. § 301, thereby initiating Case No. 16-59003 as a Chapter 7 proceeding in the United States Bankruptcy Court for the Northern District of Georgia. [Complaint ¶¶ 2, 10; Answer ¶¶ 2, 10]. On June 7, 2016, Debtor filed his *Statements "A" through "J"* (the "Sworn Schedules"), *Statement of Financial Affairs* (the "Sworn Statements"), and other bankruptcy disclosure forms under penalty of perjury. [Complaint ¶ 11; Answer ¶ 11]. According to the Sworn Statements, Debtor is the 100% owner of Series B of Caribou, and, according to the Sworn Statements, Series B assets include "Brumbley Enterprises [sic], LLC (holds notes from sale of property in Fairburn, GA) [Wisner interest 25%]." [Complaint ¶ 12; Answer ¶ 12. On May 24, 2016], Trustee was appointed as Interim Trustee of Debtor's individual case and became the permanent Trustee on June 27, 2016, at the conclusion of the meeting of creditors held pursuant to section 341(a) of the Bankruptcy Code. [Complaint ¶ 13; Answer ¶ 13].

On June 22, 2012, Piedmont filed a Complaint for Breach of Contract in the Superior Court of Walton County, which was later transferred to the Superior Court of Newton County, against Debtor and others to enforce the terms of a promissory note and guaranties. [Complaint ¶

---

[1] Piedmont filed the Motion on January 5, 2018, before the Trustee filed the Answer to Counterclaim on January 8, 2018. Notwithstanding the Motion preceding the Answer to Counterclaim, the Court has reviewed the Answer to Counterclaim in determining the merits of the Motion.

14; Answer ¶ 14]. On August 22, 2013, the Superior Court of Newton County entered a Final Judgment in favor of Piedmont and against Debtor, and others, for the principal amount of $4,793,670.81, interest in the amount of $587,121.36 through August 1, 2013, $24,707.45 in taxes paid by Piedmont, $2,817.18 in late charges, interest accruing after August 1, 2013 in the amount of $932.10 per day, plus attorneys' fees in the amount of $479,392.08. [Complaint ¶ 15; Answer ¶¶ 15, 37] Answer to Counterclaim ¶ 2].

The Complaint contains no allegation regarding Piedmont obtaining and recording a Writ of Fieri Facias on its judgment. In the Counterclaim portion of the Answer, however, Piedmont alleges as follows: "Promptly thereafter [referring to entry of the Final Judgment], Piedmont caused a Writ of Fieri Facias to be recorded in multiple counties, including: Newton County, Georgia, on September 17, 2013; Fayette County, Georgia, on October 15, 2013; and Walton County, Georgia, on November 18, 2013." [Answer ¶ 38]. In the Answer to Counterclaim, Trustee states he "lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 38 … and therefore denies them." [Answer to Counterclaim ¶ 3].

According to the Sworn Statements, which include Debtor's bankruptcy schedules and statement of financial affairs, Debtor owns 90% of Atlanta Arms & Ammo, Inc. ("AA&A"). [Complaint ¶ 16; Answer ¶ 16]. On October 2, 2013, Piedmont brought an action against Debtor and AA&A for the levy of shares Debtor owned in AA&A. [Complaint ¶ 17; Answer ¶ 17]. On information and belief, in early 2014, Debtor received a distribution of $630,000.00 from AA&A and immediately transferred it to Caribou or he caused his distribution to be made directly from AA&A to Caribou (this transfer to Caribou is hereinafter referred to as the "Transfer"). [Complaint ¶ 18; Answer ¶ 18]. In addition to the transfer of $630,000 in cash from AA&A

4

which Debtor directed to Caribou, Debtor caused AA&A to sell all its assets to another entity, Hairy and Baxter, LLC. [Complaint ¶ 19; Answer ¶ 19].

In Piedmont's suit in the Superior Court of Newton County (Civil Action No. 2013-CV-1854-5), a consent order was entered that required Caribou to pay $225,000 into a trust account, to remain in the account pending further order of the Superior Court or the consent of Piedmont. [Complaint ¶ 20; Answer ¶ 20]. The $225,000 in funds are currently being held by the attorney for Caribou. [Complaint ¶ 21; Answer ¶ 21].[2]

Trustee alleges in the Complaint, "Debtor has testified that part of the $630,000 transfer to Caribou was used to purchase property in Panama City and to purchase property for Brumbley." [Complaint ¶ 22]. Piedmont responded to that allegation in the Answer that Piedmont lacks knowledge or information sufficient to form a belief about the allegation and therefore denies the allegation. [Answer ¶ 22].

Trustee alleges in the Complaint, "On information and belief, prior to the Petition Date, [Debtor] caused Caribou to transfer $200,466 to Piedmont Bank (not including the $225,000 being held in a trust account as a result of the consent order entered in Piedmont Bank's suit)." Complaint ¶ 23. Piedmont denies that allegation. [Answer ¶ 23].

Trustee alleges in the Complaint, "Upon information and belief, based on the foregoing scheme to defraud Debtor's creditors, none of Debtor's creditors could have discovered the fraudulent nature of the Transfer before two years prior to the Petition Date." [Complaint ¶ 24]. Piedmont denies that allegation. [Answer ¶ 24].

Trustee alleges in the Complaint, "At the time of the Transfer, [Debtor] had creditors, including Piedmont and the Internal Revenue Service, that had not and still have not been paid in

---

[2] Caribou denies this in its Answer, explaining, "[T]he $225,000 is being held in the escrow account of an attorney for Mr. Wisner." [Doc. 7 ¶ 21].

full for their debts. [Debtor] made the Transfer with the actual intent to hinder, delay, or defraud his creditors." [Complaint ¶¶ 26–27]. Piedmont admits those allegations only to the extent applicable to Piedmont. [Answer ¶¶ 26–27].

In the Counterclaim portion of the Answer, Piedmont alleges, "Pursuant to Georgia law, 'all judgments obtained in the superior courts . . . shall bind all the property of the defendant in judgment, both real and personal, from the date of such judgments . . .' O.C.G.A. § 9-12-80. [Answer ¶ 39]. In the Answer to Counterclaim, Trustee states that the quotation to a Georgia statute does not require a response. [Answer to Counterclaim ¶ 4].

Piedmont further alleges, "Debtor's schedules show that Piedmont is the senior judgment creditor." [Answer ¶ 40]. Trustee admits the allegation to the extent it is consistent with Debtor's Sworn Schedules and Sworn Statements and denies it to the extent it is inconsistent. [Answer to Counterclaim ¶ 5].

### B.    Relief Sought in the Complaint and Counterclaim

Trustee seeks to avoid the Transfer under 11 U.S.C. § 544(b), which states that the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an allowable claim. The "applicable law" under which the Trustee asserts the Transfer is voidable is O.C.G.A. §§ 18–2–74 and –75 and 28 U.S.C. § 3304. [Complaint ¶¶ 25–30].

Trustee also seeks recovery of the avoided Transfer under 11 U.S.C. § 550. Complaint ¶¶ 31–35. Trustee alleges Caribou is liable for the Transfer as the initial transferee and/or the person for whose benefit the Transfer was made. [Complaint ¶ 32]. Trustee alleges Piedmont and Brumbley are liable as immediate or mediate transferees of the initial transferee. [Complaint ¶¶ 33–34].

6

In the Counterclaim, Piedmont

> requests this Court order that: 1) Piedmont's judgment lien is superior to and has priority over any and all unsecured creditors, if any, of Debtor; 2) Piedmont's judgment is superior to and has priority to the funds Plaintiff seeks to recover in this action; 3) Piedmont's judgment is superior to and has priority to the trustee; and 4) Piedmont is entitled to immediately recover the $225,000.00 currently held in Caribou's attorney's trust account.

[Answer ¶ 41].

C. **Scope of the Motion for Judgment on the Pleadings**

The Motion asserts as follows:

> Piedmont is entitled to judgment against the Plaintiff as follows: ordering that (i) Piedmont's judgment lien is superior to and has priority over any and all unsecured creditors, if any, of Debtor; (ii) Piedmont's judgment is superior to and has priority to the funds Plaintiff seeks to recover in this action; (iii) Piedmont's judgment is superior to and has priority to the trustee; and (iv) Piedmont is entitled to immediately recover the $225,000.00 currently held in Caribou's attorney's trust account.

Motion at 1-2. This language tracks, nearly verbatim, the relief requested in the Counterclaim. The Court, therefore, limits its analysis and conclusions to the relief requested in the Counterclaim.[3]

D. **Other Relevant Documents and Proceedings**

Piedmont and Trustee set forth their arguments for and against judgment on the pleadings in Piedmont's Brief in Support of Defendant The Piedmont Bank's Motion for Judgment on the Pleadings [Doc. 10] ("Supporting Brief"), Trustee's Brief in Response to the Motion for Judgment on the Pleadings [Doc. 12] ("Response Brief"), and Piedmont's Reply Brief in Support of the Motion for Judgment on the Pleadings [Doc. 13] ("Reply Brief").

---

[3] Piedmont's and Trustee's various briefs, at points, blur the line between the merits of Trustee's claim against Piedmont and the merits of Piedmont's Counterclaim. The Court describes the scope of the Motion as a point of clarification

7

Additionally, Piedmont requested oral argument on the Motion [Doc. 19], which the Court granted [Doc. 20]. The Court held oral arguments on June 12, 2018, after which the Court requested supplemental briefing on the applicability of O.C.G.A. § 18-2-77(b) to the Counterclaim and the issues raised in the briefs. Piedmont and Trustee submitted supplemental briefs on June 27, 2018 [Docs. 22, 23].

## IV.    The Parties' Arguments

In Piedmont's Supporting Brief, Piedmont argues two main points. First, Piedmont argues it has "a valid, properly perfected judgment lien that is superior to any interest of the trustee" because (1) in Georgia, a judgment lien generally attaches to all of the judgment debtor's property, both present and after-acquired;[4] (2) a judgment lienholder with a valid, properly perfected pre-petition lien is superior to that of the trustee as hypothetical lien creditor whose lien arises on the date of the debtor's filing;[5] (3) Piedmont obtained a judgment against Debtor on August 22, 2013, and perfected the judgment by recording writs of fieri facias in Newton County on September 17, 2013, in Fayette County on October 15, 2013, and in Walton County on November 18, 2013;[6] and (4) Piedmont's judgment lien pre-dates any lien the Trustee may have as a hypothetical lien creditor, which would have arisen on the petition date of May 24, 2016.[7]

Second, Piedmont argues that its judgment lien attaches to any property that comes into the estate through avoidance actions filed by Trustee because (1) "property of the estate" includes property acquired by the estate postpetition and property recovered through a trustee's

---

[4] Supporting Brief at 4 (citing O.C.G.A. § 9–12–80; *In re Fox*, No. 07-20069, 2009 WL 8617166, *1 (Bankr. N.D. Ga. Sept 29, 2009) (Brizendine, J.)).

[5] *Id.* (citing Matter of Lively, 74 B.R. 238, 239 (S.D. Ga. 1987)).

[6] *Id.* at 4–5.

[7] *Id.*at 5.

avoidance powers;[8] (2) judgment liens are generally not invalidated by a bankruptcy filing or a

discharge but rather continue and attach to a debtor's after-acquired property;[9] and (3) as held in

*In re Veterans Choice Mortgage*, 291 B.R. 894, 896 (S.D. Ga. 2003) (hereinafter, "*VCM*"), "[I]f

the trustee pursues an action to recover property fraudulently conveyed, then any property

recoverable by the trustee that is subject to a lien continues to be subject to the lien after

recovery."[10]

> Piedmont's Supporting Brief Concludes:
>
>> As of the date of the bankruptcy filing, the amount owed [under
>> the judgment] was $6,825,664.28. Even if the Plaintiff successfully
>> avoids the subject transfer(s), Piedmont's valid and properly
>> perfected judgment lien attaches to any property the trustee may
>> recover to the extent of $6,825,664.28, including the $225,000.00
>> currently held in defendant Caribou's attorney's trust account.
>> Piedmont's lien would therefore be superior to Plaintiff's claims.[11]

The parties' subsequent briefs focus exclusively on the second main argument noted

above—that is, whether and to what extent Piedmont's judgment lien encumbers the $225,000 in

trust account funds and any other property recovered by Trustee in avoidance actions.[12] Trustee,

in his Response Brief, argues that Piedmont's judgment lien never attached to the $225,000

because the $225,000 constitutes a chose in action, and in Georgia, judgment liens do not attach

to choses in action absent some type of collateral court proceeding, such as a garnishment.[13] As

---

[8] *Id.* (citing 11 U.S.C. § 541(a)(3), (7))

[9] *Id.* (citing Matter of Lively, 74 B.R. at 239)

[10] *Id.* at 5–6 (quoting *In re Veterans Choice Mortgage*, 291 B.R. 894, 896 (S.D. Ga. 2003)).

[11] *Id.* at 6.

[12] As noted, Trustee asserted insufficient information regarding—and therefore denied—Piedmont's allegation in ¶
38 of the Answer that Piedmont perfected its judgment lien by recording a writ of fieri facias in Newton, Fayette,
and Walton Counties. Answer to Counterclaim ¶ 3. Piedmont did not attach copies of any writs, recorded or
otherwise, to the Answer.

[13] Response Brief at 4 (citing O.C.G.A. § 9–13–57; *Fidelity & Deposit Co. of Maryland v. Exchange Bank of
Macon*, 100 Ga. 619, 28 S.E. 393 (1897); *Prodigy Center/Atlanta et al. v. T-C Associates*, 269 Ga. 522, 501 S.E.2d
209 (1998)).

to Piedmont's argument that its judgment lien would attach to Trustee's avoidance recoveries in general, Trustee argues at length that *VCM* was wrongly decided.[14]

Piedmont, in its Reply Brief, argues that its judgment lien attached to the $225,000 held in trust because Piedmont's suit against AA&A, while not a garnishment, constitutes a "collateral proceeding" of the sort that fixes a judgment lien on a chose in action.[15] Piedmont further argues that *VCM* was correctly decided and addresses several of Trustee's arguments to the contrary.[16] Piedmont's Reply Brief concludes by noting that

> Piedmont's claim is more than 95% of the filed claims, and as a result, Piedmont stands to receive the majority of any funds the Trustee may ultimately recover. It would be illogical and circular to … allow the Trustee to proceed with this litigation just to turn around and distribute virtually all of the recovered funds right back to Piedmont.[17]

## V.    Analysis

### A.    Georgia Law on Judgment Liens

In Georgia, judgments "bind all the property of the defendant in judgment, both real and personal, from the date of such judgments except as otherwise provided" by statute. O.C.G.A. § 9-12-80. A Georgia judgment lien "is often described as 'floating' because the lien covers property acquired by the debtor subsequent to the rendition and execution of the judgment against him." *Crossroads Bank of Georgia v. Corim, Inc.*, 262 Ga. 364, 365 n.2, 418 S.E.2d 601, 602 n.2 (1992).

Georgia statutes "otherwise provide" for several exceptions to the general rule that judgments automatically bind all property of the judgment defendant. As to real property, a judgment does not bind or become a lien on title to real property until the judgment, or a writ of

---

[14] *Id.* at 5–10.

[15] Reply Brief at 2.

[16] *Id.* at 3–4.

[17] *Id.* at 4

fieri facias issued on the judgment, is recorded with the clerk of the superior court of the county where the real property is located and is entered in the applicable indexes. O.C.G.A. § 9-12-86(b).

While a judgment lien generally attaches to personalty on entry of a final judgment, several statutory exceptions to the general rule exist. *See Levine v. Weyer (In re DOTMD, LLC),* 303 B.R. 519 (Bankr. N.D. Ga. 2003) (Bihary, J.) (providing that a creditor acquires a lien on the date of judgment against debtor's personal property even though there is no entry on the GED) (citations omitted). Most relevant here, judgments do not automatically attach to choses in action. *See* O.C.G.A. § 9-13-57 ("Choses in action are not liable to be seized and sold under execution, unless made so specially by statute."). A "chose in action" is defined as "personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld." O.C.G.A. § 44-12-20. Examples include proceeds from a contract performance, the right of a creditor to be paid on a debt, partnership interests, *e.g.*, *Prodigy Centers/Atlanta No. 1 L.P. v. T-C Assocs., Ltd.*, 269 Ga. 522, 501 S.E.2d 209 (1998), and corporate stock, *e.g.*, *Fourth Nat. Bank v. Swift & Co.*, 160 Ga. 372, 127 S.E. 729 (1925).

As explained in *Prodigy Centers/Atlanta No. 1 L.P.*, a judgment lien

> attaches only to such property of the debtor as is capable of seizure and sale under execution based upon such judgment.... [C]hoses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. [It] must be reached either by process of garnishment or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment.

*Prodigy Centers/Atlanta No. 1 L.P.,* 269 Ga. at 523 n.3, 501 S.E.2d at 211 n.3 (1998) (quoting

*Fidelity & Deposit Co. of Maryland v. Exchange Bank of Macon*, 100 Ga. 619, 625, 28 S.E. 393

(1897)) *See also McWilliams v. Hemingway*, 80 Ga. App. 843, 845, 57 S.E.2d 623, 625 (1950)

("Execution may issue under [the judgment] and levy be made on all the defendant's property of

which he is in possession. However, property or money to which the debtor has only the right of

possession rather than the actual possession is a chose in action. No lien is created upon a chose

in action by a judgment. The plaintiff's lien arises rather by summons in garnishment, and when

money due the defendant as salary is in the hands of the employer, the lien attaches from the date

of the summons.") (citation omitted); *Gen. Lithographing Co. v. Sight & Sound Projectors, Inc.*,

128 Ga. App. 304, 304, 196 S.E.2d 479, 481 (1973) ("A judgment does not create a lien on a

chose in action. The lien on a chose in action is created by the service of a summons of

garnishment, and the lien dates from the date of the service of the summons, and not from the

date of the judgment.")  The Georgia Court of Appeals described the effect of a judgment on a

chose in action in *Piedmont Sav. Co. v. Chapman*, 42 Ga. App. 555, 558, 156 S.E. 638, 640

(1931) as follows:

> [W]here moneys have been reduced to the possession of the court
> by the collection of choses in action, the liens of pre-existing
> judgments attach thereto, and upon distribution, are entitled to
> preference according to their dignity and priority, but the liens of
> such judgments can not be held to so attach to money or choses in
> action as that, prioprio vigore, they will prevent the alienation by
> the debtor of that class of property before the suing out of a
> summons of garnishment, or some other collateral proceeding
> necessary to fix absolutely the lien of such judgment so as to
> remove it from the personal dominion and control of the debtor.

*Id.* 42 Ga. App. at 558, 156 S.E. at 640. The rationale for the requirement of a collateral

proceeding reflects "sound policy, because it guarantees that the third party, who holds the

property and may also have rights in the subjection property, will receive notice and the

opportunity to be heard, and that the property is fairly distributed." *See Levine v. Weyer* 303 B.R.

at 526 n. 7 (citing *Farm Credit Bank of St. Louis et al v. Swartz (In re: Lucas)*, 18 F.3d 413, 417 (7th Cir. 1994)).

In sum, a judgment creditor must initiate a garnishment or similar collateral proceeding to attach a judgment lien to a chose in action and before such time a judgment debtor can freely transfer choses in action. In a garnishment, the lien arises upon service of a garnishment summons. There is a dearth of case law on non-garnishment "collateral proceedings" that fix a judgment lien on a chose in action. The Court will assume, without deciding, that in a collateral proceeding, the judgment lien attaches upon service of the documents initiating the proceeding and any related summons.

### B.    Issues Raised by the Parties

The Motion and briefs raise two primary issues: (1) whether Piedmont's judgment lien attached to the $225,000 currently held in escrow pursuant to the Consent Order, and (2) whether Piedmont's judgment lien will attach to any recovery by Trustee in this action.

### 1.    Piedmont's Judgment Lien and the $225,000 Held in Trust Account

Trustee argues that Piedmont's judgment lien never attached to the $225,000 because the $225,000 constitutes a chose in action, to which judgment liens do not attach absent a collateral proceeding such as a garnishment. Piedmont, in its Reply Brief, responded to Trustee's argument as follows:

> Here, Piedmont initiated and prosecuted a "collateral proceeding" to reach the $225,000.00 Specifically, in Piedmont's suit in the Superior Court of Newton County, (Civil Action No. 2013-CV-1854-5), a consent order was entered that required the payment of the $225,000.00 into a trust account, to remain in the account pending further order of the Superior Court or Piedmont's consent. The Superior Court's intent is clear: to segregate the $225,000.00 from the defendants' other accounts/monies for Piedmont's benefit and to protect those funds from being garnished or seized by another creditor.

Reply Brief at 2.

Trustee and Piedmont expounded on their arguments as to these funds at the June 12 oral arguments. Piedmont's counsel quoted an excerpt from the consent order; specifically, the portion of the order directing Caribou to "pay into the trust account of the law firm Alexander Royston LLP the sum of $225,000, which shall remain held in such trust account until further order of the court or the written consent of Piedmont." Piedmont's counsel argued that the intent of the consent order was clear–the payment into the trust account was for Piedmont's benefit and would not have been subject to seizure or garnishment by other creditors, including a hypothetical lien creditor.

Trustee's counsel, at oral argument, conceded that the funds were put into a segregated account, but asserted (1) Piedmont took no further steps to seize the funds, (2) Piedmont's entitlement to the funds was contested in the Newton County action, (3) the only concrete definition of "collateral proceeding" provided by Georgia case law is a garnishment, and (4) while the Newton County action was for a levy on shares of AA&A, Debtor's continued dominion and control over the shares suggests Piedmont never obtained the levy.

The pleadings in this adversary proceeding do not include a copy of the consent order directing Caribou to put the $225,000 into a trust account, or any other documents from the Newton County action. As further explained below, the Court has insufficient information regarding not only the consent order, but also the Newton County action itself. The Court cannot conclude, based on the pleadings alone, that Piedmont's judgment lien attached to the $225,000, let alone determine that "Piedmont is entitled to immediately recover the $225,000" as requested.

The Newton County action, as described in the pleadings, appears to be the type of collateral proceeding capable of fixing a judgment lien on a chose in action. Piedmont initiated the suit to levy Debtor's shares in AA&A. As noted above, corporate stock is a chose in action,

14

and the general rule is that choses in action are "not liable to be seized and sold under execution" unless made so "specially by statute." O.C.G.A. § 9-13-57. The Court's research indicates corporate stock, by statute, can be seized and sold under execution. *See* O.C.G.A. §§ 11-8-112, 9-13-58; *see also generally Grossman v. Glass*, 239 Ga. 319, 236 S.E.2d 657 (1977). The pleadings before the Court describe the nature of the Newton County action (a suit to levy shares) but provide insufficient information for the Court to rule, as a matter of law, that the Newton County action was the proper statutory proceeding to fix a judgment lien on corporate stock.

Even assuming Piedmont utilized the statutorily authorized procedure for levying shares of corporate stock, the consent order at issue is not a part of the pleadings and appears to be a subject of dispute with the Trustee. The pleadings contain only references to the consent order and its direction to Caribou to place the $225,000 into a trust account. The Court cannot determine whether the consent order contemplated a seizure of money for the purpose of appropriating it to pay Piedmont's judgment, or as suggested by Trustee, was intended to prevent transfer of the funds while entitlement to them was determined through litigation.

### 2.      Piedmont's Judgment Lien and Any Recovery in This Action

As noted, the parties' arguments on whether Piedmont's judgment lien attaches to any recovery obtained by Trustee in this action have focused on the persuasive value of *VCM*, 291 B.R. 894 (Bankr. S.D. Ga. 2003).

### i.  Veteran's Choice Mortgage

In *VCM*, creditor J & B Enterprises ("J & B") obtained a judgment against the debtor and perfected the judgment lien before debtor filed a Chapter 7 petition. In the bankruptcy case, J & B filed a proof of claim asserting a secured status. The Chapter 7 trustee objected to J & B's secured status, arguing that no property secured the claim. J & B argued that the trustee's attempt to change the status of the proof of claim was premature; in a pending adversary proceeding, the trustee was alleging preferential and fraudulent transfer of assets. *Id.* at 896. If the trustee was successful in the adversary proceeding, J & B contended, "property [would] be brought back into the bankruptcy estate to which the judgment lien of J & B has attached." *Id.*

The issue in *VCM*  was whether J & B's proof of claim should be allowed as secured or unsecured. The court stated that J & B's secured status depended on "whether J & B's judgment lien attaches to property recovered by the Trustee under a § 548 theory and to property recovered by the Trustee based on a § 547 cause of action." *Id.*

As to whether the judgment lien attaches to property recovered under § 548, the court stated, "[I]f a creditor has a state law right to seize and recover the property, it's [sic] lien will attach to after-acquired property recovered by the bankruptcy trustee." That determination, according to the court, depended on whether "the creditor has a right under state law, independent of the bankruptcy filing, to recover the property." *Id.* at 897.

The court in *VCM* construing former O.C.G.A. § 18–2–22,[18] stated that in Georgia, "a pre-transfer creditor has a right to recover property fraudulently transferred," regardless of

---

[18] Former O.C.G.A. § 18–2–22 was the precursor to Georgia's Uniform Fraudulent Transfers Act ("UFTA"), O.C.G.A. §§ 18–2–70 to –85, which went into effect on July 1, 2002. As of July 1, 2015, the Uniform Fraudulent Transfers Act was renamed the Uniform Voidable Transactions Act ("UVTA").

whether the transfer was actually fraudulent or constructively fraudulent. *Id.* at 897.[19] But a "post-transfer creditor[] may only recover the property if he can show the grantor's actual intention to defraud subsequent creditors." *Id.* at 897.  The court continued, "Here, if the creditor is a pre-transfer creditor who holds a valid judgment lien, his lien will attach to any property recoverable by the trustee by means of § 548. However, if the creditor is a post-transfer creditor his lien will attach to property recoverable by the trustee only if the evidence establishes the debtor's actual intent to defraud subsequent creditors." *Id.* at 898.

As to whether the judgment lien could attach to any preference recovery under § 547, the court concluded that no judgment lien can ever attach to such a recovery, reasoning as follows: "For the judicial lien to attach to property recoverable from a preferential transfer the creditor must have a state law right to recover the property transferred. … This [preference] cause of action is exclusively reserved to the bankruptcy trustee and no creditor may set aside a preferential transfer. J & B has no state law remedy for a preferential transfer. Having no state law right for recovery prevents J & B's judicial lien from attaching to any property recoverable by the trustee by virtue of the preference." *Id.* at 898-99 (citation omitted).

While the Court agrees with *VCM* that a judgment creditor's rights are determined by underlying state law, the Court respectfully disagrees that a determination of whether the creditor would have a right to recover the property outside bankruptcy answers the question of whether a judgment lien has attached to a particular type of property and would thus encumber the property recovered by a trustee.  In Georgia, the ability of a judgment lien creditor to perfect its lien in real estate, personalty, or a chose in action differs depending on the type of property and on what other type of lien is under consideration. *See Levine v. Weyer,* , 303 B.R. at 524(in part the court

---

[19] In a footnote, the court cited United States v. Hickox, 356 F.2d 969 (5ᵗʰ Cir. 1966), for the following proposition: A pre-transfer creditor is one who is a creditor at the time of the fraudulent transfer and thereafter reduces his claim to a judgment lien." *In re Veterans Choice Mortgage*, 291 B.R. at 897 n.4.

discusses the need or lack thereof for a judgment creditor to record a fi fa in the GED and priority vis a vis the holder of a consensual security interest). Thus, the Court is not persuaded by the broad proposition set forth in *VCM*. Because a judgment lien that is not otherwise avoided under § 522(f) or § 547 of the Bankruptcy Code continues in the property to which it attached prior to the filing, the Court believes that the proper analysis considers each type of property and the facts relevant to the status of any lien against such property. Relevant circumstances could include recordation or lack thereof, where the recording occurred, filing of a garnishment or other collateral action, and service of the summons for such actions.

While the Court does not agree with Piedmont that *VCM* adequately addresses the issues before the Court, the Court also does not agree with Trustee's arguments for why *VCM* was wrongly decided. Trustee argues that *VCM* fails to address 11 U.S.C. § 552(a), a Code section Trustee asserts "controls." Section 552(a) states, subject to exceptions that do not apply here, that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Trustee acknowledges that § 552(a) refers to liens arising from security agreements, rather than judgment liens. Trustee asserts, however, that "the clear intent" of § 552(a) "is that property acquired by the estate is not subject to a prepetition lien." The Court disagrees that § 552(a) is relevant to this dispute. The Bankruptcy Code specifically defines the terms "security agreement" and "judicial lien." *See* 11 U.S.C. § 101(50) (defining "security agreement"; § 101(36) (defining "judicial lien"). Section 552(a) plainly applies to the former and not the latter.

Trustee also argues that § 362(a)(4)'s prohibition of "any act to create, perfect, or enforce any lien against property of the estate" prevents the attachment of a judgment lien on a trustee's

18

recovery in an avoidance action. Trustee cites numerous cases holding that § 362(a)(4) operates to stay an "act" that occurs by operation of law, such as the automatic attachment of judgment liens on after-acquired property. The Eleventh Circuit has rejected the argument that the automatic stay protects the estate against adverse effects that occur merely by operation of state law. *See Title Max v. Northington (In re Northington)*, 876 F.3d 1302, 1310, 1313 (11th Cir 2017) ("[W]e must decide whether the filing of a bankruptcy petition necessarily freezes the debtor's estate and thereby forestalls the operation of the state-law rules that define and regulate the property interests that comprise that estate. … Section 362(a)'s particular language … specifically targets the affirmative conduct of creditors. … While Section 362(a)'s text undoubtedly prevents creditors from taking steps to actively pry assets out of a debtor's estate, it does not separately prevent those assets from evaporating on their own—as here, 'automatically'—pursuant to the ordinary operation of state law.").

### ii.     The Court Cannot Currently Determine Whether Piedmont's Judgment Lien Will Attach to Any Recovery by Trustee

Because Piedmont relies primarily on *VCM*, Piedmont has not provided a compelling legal argument that its judgment lien will automatically attach to any recovery by Trustee in this proceeding. And, the pleadings before the Court do not include any of the documents underlying Piedmont's Counterclaim, such as Piedmont's judgment against Debtor, any recorded writ of fieri facias issued on the judgment, Piedmont's Newton County lawsuit against Debtor and AA&A, or the order directing Caribou to deposit $225,000 to an attorney trust account. Trustee has denied—for lack of knowledge or information—Piedmont's allegation that it obtained a writ of fieri facias on its judgment and recorded the writ in Newton, Fayette, and Walton Counties between September and November 2013. The Court must accept as true the facts as set forth by

19

Trustee, the non-moving party. Moreover, even if Piedmont has recorded writs of fieri facias, recording would not cause its judgment lien to attach to a chose in action such as the AA&A distribution. Consequently, the Court cannot currently conclude that, as a matter of law, the judgment lien will attach to or give Piedmont any priority to any recovery obtained by Trustee in this proceeding.

**V.      Conclusion**

For the forgoing reasons, it is **ORDERED** that The Piedmont Bank's Motion for Judgment on the Pleadings is ***denied***.

**END OF ORDER**

**Distribution List**

Kyle A. Cooper, Trustee
Suite 102
615 Colonial Park Drive
Roswell, GA 30075

William D. Matthews
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

Nicholas P. Smith
Buckley Beal LLP
Suite 900
1230 Peachtree Street, NE
Atlanta, GA 30309

Aaron M. Kappler
Thompson, O'Brien, Kemp & Nasuti, P.C.
Suite 300
40 Technology Parkway South
Peachtree Corners, GA 30092

H. Matthew Horne
Rosenzweig, Jones, Horne & Griffis, P.C.
32 South Court Square
P. O. Box 220
Newnan, GA 30264